UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SFR SERVICES L.L.C.                              CASE NO.:

    Plaintiff,

        v.

ZINOBER, DIANA &
MONTEVERDE, P.A.

    Defendant.
_____/

## COMPLAINT

Plaintiff, SFR Services L.L.C. ("SFR" or "Plaintiff"), by their undersigned counsel, sues Defendant Zinober, Diana, & Monteverde, P.A. ("Zinober"), and alleges:

### INTRODUCTION

1. This case involves a calculated and coordinated effort by Defendant – a law firm – to file meritless claims against SFR to inflict economic harm on Plaintiff and its business. Further, this case involves a plan by Zinober in an underlying state court action to challenge SFR's right to be paid a deductible for work performed. The underlying lawsuit discussed below was styled *Robert J. Welsh and Alyssa E. Greenspan v. SFR Services L.L.C.*, Case No. 2020-961CA, which was pending in the Nineteenth Judicial Circuit in and for Martin County, Florida (the "State Court Action").

2. A part of Zinober's law practice it seems is to represent property owners in breach of contract claims against SFR. While Zinober should be seeking justice for their clients in the face of unjustified claims, Zinober made the choice to falsely accuse SFR of breach of contract and of maliciously filing a fraudulent lien.

3. The sum of the underlying State Court Action commenced by Zinober, on behalf of the homeowners, involved a purported scheme whereby SFR and property owners signed an Assignment of Benefits ("AOB") contract under the auspices that SFR would repair or replace damage done to the property owners' home as a result of natural disasters. Property owners would receive the funds from the insurance company and then transfer funds for worked performed to SFR. In this instance, the only financial obligation the Plaintiffs in the State Court Action owed to SFR was to pay a nominal deductible of $4,500.00. This obligation was not fulfilled by the homeowners. Yet, Zinober and the property owner falsely accused SFR of filing a fraudulent lien on the property owner's home, breach of contract, and damages.

4. While Zinober filed a meritless action alleging breach of contract (among other causes of action) against SFR, it was SFR that had a valid breach of contract claim against the property owners. SFR began work as it were contractually obligated to perform, but the property owners refused to pay the deductible they were contractually required to pay. Thus, SFR reasonably stopped working on property owners' home. Upon information and belief, the homeowners then sought the legal guidance and assistance of Zinober.

5. In essence, the underlying action was brought as a result of a lien inadvertently being filed against the owners' home, even though SFR had just cause to record a lien on the home due to the failure to pay the deductible. SFR acknowledged there was a clerical error in the amount of the recorded lien. Critically, SFR did not seek the enforcement of the lien at this time. Ultimately, SFR discharged the lien, which thereafter resulting in actual and constructive notice to all parties involved, including Zinober, rendering the issue moot.

6. After the lien was already discharged, the owners allegedly sought to refinance their home. They tried to claim due to the "fraudulent" lien on their home they were not able to refinance the property. However, it was known at all times and then proven by the property owners' own expert that they never filed a full refinancing application. Furthermore, it was also known at all times, and subsequently proven that by the time the property owners sought to refinance, the lien had already been discharged. Zinober and the property owners also tried to blame the lien as the reason why they received a higher interest rate when allegedly sought to refinance their home. This too was known at all times to be false and was subsequently proven to be false. Despite all of the evidence, which was known by Zinober and the homeowners prior to commencing the State Court Action, Zinober still advised the property owners to move forward with their baseless suit and frivolous claims of damages.

7. Though there was clearly no evidence to support property owners' claims for the State Court Action, Zinober continued to prosecute the matter for years. Such conduct forced SFR to incur significant attorneys' fees and costs, damage to its

business, and to its overall economic situation. Zinober should have known the State Court Action no realistic or reasonable viability of success.

8. During the years in which the State Court Action was pending, it was evident the homeowners suffered zero damages and in fact were in breach of their own contract with SFR. Ultimately, a jury swiftly rendered a favorable verdict for SFR, the Court entered a Final Judgment for SFR, the homeowners were awarded zero dollars in the State Court Action, and SFR was awarded entitlement to its attorneys' fees.

9. Thereafter, facing the prospect of a large fee judgment, the property owners filed for bankruptcy. All that Zinober accomplished was commencing a meritless lawsuit that had no chance of success from the inception of the case, continuously litigating the matter for years, amending pleadings, and otherwise pursuing a case that should never have been filed.

10. The filing and prosecution of the State Court Action constituted malicious prosecution. The purpose of Zinober's involvement prior to the filing of the Complaint, during the preparation, and throughout the prosecution of the State Court Action was to harm SFR's business. Zinober was successful in its pursuit, and due to Defendants' wrongful conduct, Plaintiff has sustained substantial damages, including significant attorneys' fees and costs in defending a State Court Action that was baseless from the inception of the dispute.

## JURISDICTION, PARTIES, AND VENUE

11. At all times material hereto, SFR was and is a Florida limited liability company duly registered and authorized to do business throughout the State of

Florida, with its principal address located in Martin County, Florida. SFR has one member, Ricky McGraw, a citizen of Puerto Rico. Ricky McGraw's domicile is in Dorado, Puerto Rico because he has a true, fixed permanent home, and principal establishment in Puerto Rico and to which he intends to return whenever he is absent from it.

12. Defendant Zinober is a Florida corporation with its principal place of business in St. Petersburg, Florida, which is located in Pinellas County, Florida. Thus, Defendant is a citizen of Florida.

13. Venue is proper in the United States District Court for the Middle District of Florida under 28 U.S.C § 1391(b)(1), because it is where the Defendant resides and conducts business.

14. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of fees, costs, and interest, and is between citizens of different states.

## GENERAL ALLEGATIONS

A. **THE HOMEOWNERS' RIGHTS AND THE USE OF ASSIGNMENT OF BENEFITS CONTRACTS ARE STILL STATUTORILY ENFORCEABLE IN FLORIDA.**

15. While Zinober detests the once prevalent us of AOBs, Florida allowed policyholders to continue to assign any post-loss benefits of a residential or commercial property insurance contract to still be effective if established prior to January 1, 2023.[1]

---

[1] My Florida CFO, "Assignment of Benefits (AOB)" (Sept. 3, 2025), *available at* https://myfloridacfo.com/division/consumers/consumerprotections/assignmentofbenefits.

16. An AOB established prior to the above date is protected under the Homeowners Claims Bill of Rights (the "Homeowners Bill of Rights") set forth in Section 627.7142 of the Florida Statutes.[2]

17. While the Homeowners Bill of Rights is not intended to list every right recognized under Florida law, it does state homeowners generally have the statutory right to choose the contract that repairs damage to a home with respect to an insurance claim.

18. In this connection, AOBs are frequently used in the property damage industry to make the claims process more efficient for the homeowner and the contractor. Fundamentally, an AOB is a written agreement that permits an insured to voluntarily assign his or her rights and insurance benefits to a third-party contractor.

19  Once signed, the contractor "steps into the shoes" of the policyholder and allows the contractor (i) to discuss the insurance claim with the carrier; (ii) to bill the insurer directly for work performed and materials furnished for the benefit of the insured; (iii) to be paid directly by the carrier; and (iv) if necessary, commence an action against the insurance company to collect amounts due and owing to the contractor.

20  AOBs are not new and were used for an extended period, with high frequency during emergency weather situations. In particular, AOBs were prevalent in residential properties when homeowners suffered damages to their home and need

---

[2] Fla. Stat. § 627.7152 (2024).

to hire contractors to repair the issues. When damage does occur, often immediate remediation is required to protect against further damage to the property.

21. AOBs are regulated in Florida pursuant to Section 627.7152 and 627.7153 of the Florida Statutes. These laws became effective in 2019 and are still protecting those agreements properly established prior to January 1, 2023.

22. Homeowners typically exercise their AOB rights under their insurance contracts so the contractors making the repairs can handle the claim without the need for a homeowner's constant involvement with the insurance company, an approach that many homeowners find preferable.

23. Many homeowners lack extensive familiarity or experience with the claims process, which can be daunting and stressful. AOBs also allow repairs to be made without the homeowner paying the cost of the remediation upfront and then seeking reimbursement from insurers.

**B.    THE STATE COURT ACTION WAS MERITLESS AND INFLAMMATORY**

24. Defendant alleged SFR participated in a scheme that *(i) formed the basis for a breach of contract; (ii) required an order to show cause; and (iii) amounted to the filing of fraud/fraudulent lien*. The State Court Action was highly inflammatory, had no basis in law or fact, and was not based on a scintilla of credible evidence.

25. On October 28, 2020 property owner and Zinober filed the State Court Action. A copy of the Complaint is attached hereto as **Exhibit A**. A copy of the Amended Complaint is also attached hereto as **Exhibit B**.

26. The purpose of the filing and continued prosecution of the State Court Action was to serve as an unlawful tool to systematically harm SFR, as well as an improper mechanism used to force SFR to forgo a deductible it was entitled to receive.

27. SFR is a licensed general contractor with significant experience restoring and repairing commercial and multi-family properties in Florida damaged by hurricanes, windstorms, floods, and fires. SFR is a restoration company and handles projects involving repairing or replacing concrete and clay tiles, shingled and flat roofs, replacing gutters, replacing windows and doors, sheetrock repairs, and repairs to other structural issues.

28. Zinober falsely claimed SFR breach its contract with the homeowners. Zinober blatantly failed to recognize that SFR did not continue working on property owners' home as they failed to pay the required deductible. Thus, property owners had breached their contract with SFR first. Defendant also wrongfully accused SFR of engaging in fraudulent behavior.

29. To push the dubious narrative, Zinober tried to falsify the facts and allege that due to SFR's lien on the property owners' home, they were harmed. The harm included the inability to refinance their home as well as a costly interest rate. Welsh Depo. Trans. pg. 25:19-25 as **Exhibit C**; Greenspan Depo. Trans. pg. 28:13-15, 39:10-14 as **Exhibit D**. Zinober attempted to push the claim that the interest rate was due to the lien. Welsh Depo. Trans. pg. 25:19-25.

30. This notion was expressly contradicted by the homeowner's own expert, Jospeh Latini, who was deposed and testified that liens and other encumbrances do

not have an effect on interest rates or preventing the approval of a loan. Latini Depo. Trans. pg. 22:14-17, 23:10-21 as **Exhibit E**.

31. Significantly, both the expert and the homeowners admitted in the State Court Action that there was also another lien or encumbrance on the property at the time they were seeking refinancing. Latini Depo. Trans. pg. 39:8-17, Welsh Depo. Trans. pg. 21:4-10.

32. Even more egregious, the homeowners and their expert admitted that while seeking to refinance their home, SFR had already discharged the lien, negating any factual or legal possibility that it played any role in the alleged financing transaction. Welsh Depo. Trans. pg. 25:19-25, Latini Depo. Trans. pg. 43:16-19, 50:6-15, 52:3-8, *See also* Release and Waiver of Lien as **Exhibit F**.

33. Zinober painted SFR in an evil light, as a predator in the State Court Action that prayed on the Plaintiff-homeowners when, in reality, SFR suffered damages and was the target of frivolous claims. Zinober knew SFR had discharged the lien and still proceeded with the matter anyway. Latini Depo. Trans. pg. 43:16-19, 50:6-15, 52:3-8. Zinober knew or should have known there was no viable claim.

34. SFR incurred significant damages defending a meritless action, including significant attorneys' fees and costs. SFR seeks to recover the damages incurred due to Zinober commencing and continuing to prosecute a case that was not legally or factually plausible.

## CAUSE OF ACTION

## COUNT I - MALICIOUS PROSECUTION

35. Plaintiff realleges the allegations contained in Paragraphs 1-34 above, as if set forth fully herein.

36. Zinober filed the State Court Action. Zinober chose to represent the Plaintiff-property owners despite their claims being frivolous in the above-mentioned action.

37. Zinober commenced the State Court Action against SFR and continued the prosecution of the lawsuit for a significant period of time. As a result, Zinober was the legal cause of the action against SFR, who was the Defendant in the underlying case.

38. The underlying proceeding resulted in a Final Judgment in favor of SFR resulting in a bona fide termination of the proceeding, a copy of which is attached as **Exhibit G**.

39. Zinober lacked probable cause in filing and continuing to prosecute the State Court Action. Critically, the lawsuit had no reasonable possibility of success.

40. In fact, at all stages of the proceedings, probable cause did not exist to maintain the State Court Action because the causes of action, and the facts purportedly alleged, were fabricated and not based on credible facts.

41. Further investigation on behalf of Zinober was necessary before filing the aforementioned action. Zinober initiated the State Court Action based on facts that were easily discoverable to be either completely false or easily understood differently.

42. Additionally, Zinober commenced and continued the prosecution of the State Court Action despite the fact any reasonable attorney would not have regarded the lawsuit as tenable and/or Zinober unreasonably neglected to investigate the facts and the law before filing and attempting to litigate the State Court Action. Thus, Zinober did not file the lawsuit and continue the prosecution of the case in good faith and for a legally justifiable reason.

43. As set forth in detail above, Zinober filed the State Court Action with actual and legal malice.

44. SFR has incurred significant damages, including attorneys' fees and costs, as a direct and proximate result of Zinober maliciously filing and prosecuting the State Court Action.

WHEREFORE, Plaintiff, SFR Services L.L.C., respectfully request that this Court enter a judgment against Defendant, Zinober, Diana & Monteverde, P.A. for the above compensatory and consequential damages, punitive damages based on Defendants' evil intent or callous or reckless indifference to protected rights, prejudgment interest, costs, and such other relief that this Honorable Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demands a trial by jury on all counts so triable.

Dated: December 30, 2025

                                          **SHAPIRO, BLASI, WASSERMAN & HERMANN, P.A.**
*Attorneys for Plaintiffs*
7777 Glades Road, Suite 400
Boca Raton, FL  33434
Telephone:  (561) 477-7800
Facsimile:  (561) 477-7722

By:    */s/ Joshua B. Alper*
        Joshua B. Alper, Esq.
        Florida Bar No. 59875
        Primary E-Mail: jalper@sbwh.law
        Secondary E-Mail: crestivo@sbwh.law